The appellant, Joseph D. Quinlivan, Jr., was convicted of manslaughter, in violation of § 13A-6-3, Code of Alabama 1975. He was sentenced to 12 years in the state penitentiary.
The facts tended to show that on the afternoon and evening of November 14, 1987, the victim, Bob DeGarcia, and various friends were talking, drinking, and playing pool at DeGarcia's place of business, Garcia's Sign Company, in Mobile. The appellant, Quinlivan, was among this group of friends. He had consumed a pitcher of beer plus three or four cans of beer before he arrived at DeGarcia's place of business early in the evening.
Within a short period of time after the appellant's arrival, all were intoxicated. Joe Boswell and DeGarcia began throwing knives at a target on the wall. It was a well-known fact that the victim was very skilled with a knife. A discussion ensued as to whether one armed with a knife or one armed with a pistol would be at a greater advantage in a one-on-one fight. Boswell got Quinlivan's pistol from Quinlivan's car at Quinlivan's request, and they examined it. The victim then put a large knife to the appellant's throat to demonstrate how easily he could cut somebody's throat.
Sometime before midnight, the party broke up. Everyone except the appellant and the victim left. The victim had a small living area in the back of his place of business. Because he felt too intoxicated to drive, the appellant had decided to sleep on one of the couches in this living area.
The victim and the appellant continued to drink. The victim started playing with his knife again. He demonstrated several times how quickly he could get it from his pocket and flip it open. This was the same knife that the victim had held to the appellant's throat earlier in the evening.
We note that the victim, DeGarcia, was 6' 2" tall and weighed 237 pounds. Quinlivan was 5' 7" tall and weighed 232 pounds. Moreover, Dr. John McGehee, Quinlivan's physician, testified that Quinlivan had had surgery for partial intestine removal, stomach *Page 804 
stapling on two occasions, a heart attack, open heart surgery where six bypasses were performed, and a stomach hernia. According to Dr. McGehee, Quinlivan was not in any shape to fight or to flee in the event of danger. It was also established that Quinlivan is almost blind without his glasses.
The appellant testified that he later decided to go home, so he got his gun and his car keys and headed for the door. As the appellant was leaving, the victim pulled his knife out and said, "Put the clip in the gun, Mr. Q." Quinlivan did so. DeGarcia then said, "Mr. Q., I'm going to cut you." A large pool table was between the appellant and the door, thus leaving the appellant nowhere to escape as the victim continued towards him with the knife. The appellant fired five shots at the victim and then fled the scene, throwing the gun to the ground. The cause of death was loss of blood as a result of gunshot wounds.
The appellant raises eleven issues on appeal. However, this court finds it necessary to address only two of those issues, because they are dispositive of this appeal.
 I
The appellant first argues that the trial court erred in denying his written requested jury charge no. 49, to-wit:
 "I charge you, members of the jury, that while threats alone will not serve as a justification for homicide, if the jury believes from the evidence that the deceased, at the time of the homicide was manifesting an intention to carry such threats into execution, by a positive act then done, or, that from the acts of the deceased at the time of the homicide, it would have appeared to a reasonable mind, under the circumstances, that the deceased was attempting to execute the threats against the defendant, you may then consider the threats made by the deceased in justification of the homicide."
The evidence at trial, both through the appellant's statement introduced by the prosecution, and through his own testimony, established the appellant's reliance on self-defense as a defense in this case. It was his contention that just before the fatal shooting, the victim had threatened him and immediately thereafter had overtly menaced him with a knife, giving every indication that he fully intended to harm him with it. This court and the Alabama Supreme Court have uniformly held in numerous cases that the requested jury charge, no. 49 here, is required to be given under the fact situation presented. Williams v. State, 406 So.2d 1053 (Ala.Cr.App.), cert. denied, 406 So.2d 1055 (Ala. 1981); Wiggins v. State,398 So.2d 780 (Ala.Cr.App.), cert. denied, 398 So.2d 783 (Ala. 1981); Nelson v. State, 397 So.2d 198 (Ala.Cr.App.), cert. denied 397 So.2d 199 (Ala. 1981); Ex parte Traweek,380 So.2d 958 (Ala. 1979); Hunter v. State, 295 Ala. 180, 325 So.2d 921
(1975); Karr v. State, 100 Ala. 4, 14 So. 851 (1893);Gilliam v. State, 50 Ala. 145 (1874).
This charge is required when a threat is made by a victim at or about the time of a fatal altercation, as well as when threats are made by a victim prior to an incident causing his death. As this court held in Nelson:
 "An accused is entitled to the charge in question whenever some evidence of self defense has been offered and some testimony of a threat and its attempted execution has been presented."
Nelson, supra, 397 So.2d at 199. Moreover, the requested jury charge is required even though the trial court "fully and fairly" instructs the jury on the defense of self-defense, because the general law of self-defense does not cover the situation expressed in the charge. Williams, supra, 406 So.2d at 1054; Wiggins, supra, 398 So.2d at 782. Therefore, the trial court erred in denying the appellant's written requested jury charge quoted above.
 II
The appellant also contends that the trial court erred by denying his written requested jury charges no. 69 and 70, to-wit:
"REQUESTED JURY CHARGE NO. 69
 "I charge you, members of the jury, that if you believe from the evidence that *Page 805 
at the time of the killing the deceased was under the influence of alcohol, you may consider such fact in determining whether or not the defendant acted in self-defense.
"REQUESTED JURY CHARGE NO. 70
 "I charge you, members of the jury, that if you believe from the evidence that the deceased at the time of his death was under the influence of alcohol, and that as a result of being under such influence, the deceased was aggressive, or belligerent, or quarrelsome, then you should consider such facts in determining whether or not the defendant acted in self-defense in killing the deceased, as I have explained the law governing self-defense to you."
At the time of the fatal altercation between Quinlivan and DeGarcia, DeGarcia was highly intoxicated. Not only did the appellant testify to this fact, but Dr. LeRoy Riddick, the Mobile County coroner, did also. Dr. Riddick testified that the victim's blood alcohol level had been determined from a vitreous humor sample to be 0.28%, nearly three times the level required to conclusively prove guilt in a DUI case. Dr. Riddick further testified that the significance of the sample was that at some point prior to his death, the victim's blood alcohol level had been higher than the 0.28% test result.
A defendant is permitted to demonstrate, under a theory of self-defense, that the victim was under the influence of alcohol at the time of the fatal altercation.
 "The accused in homicide may prove the intoxication of the deceased as tending to show the deceased's aggressive and fearsome conduct at the time of the homicide, provided evidence is offered which warrants a finding of self-defense."
C. Gamble, McElroy's Alabama Evidence, § 60.03(1)(c) (3d ed. 1977). See also Ferguson v. State, 21 Ala. App. 116, 105 So. 435
(1925).
The victim's high degree of intoxication was critical to the appellant's defense of self-defense. The jury should have been instructed on how to utilize the intoxication evidence. The trial court erred in refusing the appellant's written requested jury charges no. 60 and 70.
As a result of the trial court's refusal to give the aforesaid written requested jury charges, the judgment of the Mobile Circuit Court must be, and it is reversed and the cause remanded for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
All the Judges concur except BOWEN, J., who concurs in result only.