David Smith was indicted by the grand jury of Mobile County, Alabama on a charge of murder, in violation of § 13A-6-2, Code of Alabama 1975. The jury's verdict was "guilty of murder as charged in *Page 225 
the indictment." The trial judge sentenced the appellant to 25 years' imprisonment.
Roderick Williams testified that on February 26, 1990, he and his brother, Levi Williams, the murder victim, were going home from Mardi Gras. While travelling down Ross Street, they had to stop for a vehicle blocking the street. This vehicle, a yellow Toyota automobile, was stopped between two other vehicles that were parked on either side of the street. Levi Williams stuck his head out of the window and asked the driver to move the Toyota. At that point, Johnny Murphy got out of the passenger's side of the Toyota and walked towards the victim's car. Levi Williams then got out of his car, the parties exchanged words, and a fistfight started. When Roderick Williams got out of the car to assist his brother, David Smith got out of the driver's side of the Toyota with a gun in his hand and began firing shots. David Smith and Johnny Murphy then got back in the Toyota and left the scene.
Dr. Song W. Wong, a forensic pathologist, testified that the murder victim, Levi Williams, died as the result of a gunshot wound to the chest.
 I
The appellant contends that the trial court's denial of his motion to admit Cedric Williams's signed statement was reversible error. We disagree. Cedric Williams was an eyewitness to the shooting.
Defense counsel was allowed to read the contested statement into evidence in its entirety and to subject Cedric Williams to a thorough and sifting cross-examination in an attempt to impeach him by showing an inconsistency between the statement and one given earlier and to discredit Williams's recollection of how the shooting occurred.
The following was said during a bench conference:
 "MR. HARRISON [prosecutor]: Judge, there are a lot of other hearsay statements in this statement that he gave that are inadmissible and inappropriate for this jury to hear, that have no relation to what was going on.
 "THE COURT: I realize that. That's the reason I wouldn't let him introduce it.
 "MR. HARRISON [prosecutor]: I know it, and he's getting ready to ask the questions again and I ask if he's going —
 "MR. FRIEDLANDER [appellant's counsel]: It's a separate statement given at a different time.
 "THE COURT: Well, hearsay is hearsay. Doesn't make any difference whether it's in that statement or whatever.
 "MR. FRIEDLANDER [appellant's counsel]: I'd ask —
 "THE COURT; You can ask him anything you — (The Court and Mr. Friedlander speak at once.)
 "MR. FRIEDLANDER [appellant's counsel]: — what was said.
 "MR. HARRISON [prosecutor]: Wait a minute, Judge. It goes to a bunch of other things that are totally hearsay and totally inadmissible —
"THE COURT: Only stick to this case." (R. 185-86.)
Because the statement contained hearsay that was inadmissible and inappropriate for the jury to hear, the trial judge did not allow the written exhibit to be officially entered as a defense exhibit. The trial court did, however, allow extensive cross-examination.
As stated in McElroy's Alabama Evidence:
 "It is generally agreed that, when a witness is called to testify to a material issue in the case, the party against whom the witness is called may impeach his credibility by proving that he has previously made statements that are inconsistent with his present testimony. These prior statements of self-contradiction can be introduced either through the cross-examination of the witness or, under limiting rules we will discuss subsequently, by introducing other witnesses who will testify to the inconsistent statement."
C. Gamble, McElroy's Alabama Evidence § 155.02(2)(1) (4th ed. 1991).
The Alabama Supreme Court, in Bice v. Steverson, 205 Ala. 576,88 So. 753, 757 (1921), held that: *Page 226 
 "When the testimony of a witness is materially different from another statement made by him, he may, of course, be impeached by the introduction in evidence of his former contradictory statement."
Bice, at 757.
We agree with the State that Cedric Williams's written statement was not materially different from the earlier statement. In both statements, he was adamant that the appellant had shot the victim, Levi Williams, while Levi Williams was wrestling with a third party.
Because defense counsel was allowed to read the contested statement into evidence and to subject Cedric Williams to a thorough cross-examination, no error occurred.
 II
The appellant contends that the trial court's refusal to give written requested charges number five and seven was reversible error.
The charges read as follows:
"DEFENDANT'S JURY CHARGE NUMBER 5
 "I charge you, members of the jury, that if you believe from the evidence that at the time of the killing the deceased was under the influence of alcohol, you may consider such fact in determining whether or not the defendant acted in self-defense."
"DEFENDANT'S JURY CHARGE NUMBER 7
 "I charge you, members of the jury, that if you believe from the evidence that the deceased at the time of his death was under the influence of alcohol and that as a result of being under such influence, the deceased was aggressive, or belligerent, or quarrelsome, then you should consider such facts in determining whether or not the defendant acted in self-defense in killing the deceased, as I have explained the law governing self-defense to you." (R. 20.)
 " 'The accused in homicide may prove the intoxication of the deceased as tending to show deceased's aggressive and fearsome conduct at the time of the homicide, provided evidence is offered which warrants a finding of self-defense.' C. Gamble, McElroy's Alabama Evidence, Section 60.03(1)(c) (3rd ed. 1977), citing Nixon v. State, 261 Ala. 74, 72 So.2d 846 (1954); Harrell v. State, 166 Ala. 14, 52 So. 345 (1910); Ferguson v. State, 21 Ala. App. 116, 105 So. 435 (1925)."
Here, there was evidence that would support a reasonable inference of self-defense. The trial court gave extensive jury instructions on self defense.
At the time of the shooting, Levi Williams was intoxicated. Dr. Wong testified that Levi Williams's blood alcohol content was .168 percent and a vitreous humor sample determined the content to be .216 percent. Dr. Wong testified that at the time of death Levi Williams was legally intoxicated.
Dr. Matthew Talbert Barnhill, Jr., a forensic toxicologist with the Alabama Department of Forensic Sciences in Mobile, Alabama, agreed with Dr. Wong that the deceased was under the influence of alcohol at the time of his death.
The appellant was not allowed to testify as to the deceased's intoxication level, but did testify that the deceased was acting "wild" prior to the shooting.
"The victim's degree of intoxication was critical to the appellant's defense of self-defense. The jury should have been instructed on how to utilize this evidence." Quinlivan v.State, 555 So.2d 802, 805 (Ala.Crim.App. 1989). Therefore, the trial court erred in refusing to give appellant's written requested jury charges numbers five and seven.
As a result of the trial court's refusal to give the aforesaid written jury charges, the judgment of the circuit court must be, and the same is hereby, reversed and the cause remanded for a new trial.
REVERSED AND REMANDED.
All the Judges concur. *Page 227