BOWEN, Presiding Judge.
Frank Malphurs, the appellant, was indicted for the murder of Billy Gene Bodi-ford. He was convicted of manslaughter and was sentenced to 15 years’ imprisonment. Two issues are raised on this direct appeal from that conviction.
I.
We reject the appellant’s argument that the verdict of the jury is contrary to the law and to the great weight of the evidence because of the uncontradicted evidence of self-defense.
It is undisputed that the appellant shot Bodiford at the AAA Hunting Club in Crenshaw County, Alabama, on January 12, 1992. The disputed issue at trial was whether the appellant acted in self-defense.
The shooting occurred in the yard of the hunting club in front of the victim’s pickup truck. There was evidence that the appellant and the victim were friends; that they had co-founded the hunting club; that the appellant “ran” the club for the victim; and that at the time of the shooting, the appellant was living at the club. There was evidence that the victim had previously told the appellant not to drive his truck “when he was drinking,” (R. 133) and that immediately before the shooting occurred, the appellant and the victim were arguing over the appellant’s use of the victim’s truck.
*1311 There was evidence that, during this argument, the appellant and the victim were “pushing and shoving and yelling.” R. 67. The appellant was heard to say, “I’m going to do it.” R. 49. A witness testified that he observed the appellant “with his hand raised and pointed and when the gun fired [the witness] ascertained it was a pistol.” R. 50. Because it was dark and raining, no witness, other than the appellant, could testify as to what the victim was doing immediately before and at the time of the shooting.
Immediately after the shooting, the appellant stated that he “couldn’t believe that he shot Bill”; that “he didn’t mean to do it” and “[h]e was sorry he did it”; that “he shot Bill, but they were fighting and [the appellant] thought Bill was reaching for a pistol and shot”; that he “can’t believe he did it.” R. 68-69. A witness testified that the appellant told him that the victim “was going to shoot him prior to reaching inside his jacket” (R. 72) and that the appellant “didn’t know whether Mr. Bodiford had a gun or not,” (R. 73).
In a statement to Sheriffs Deputy Bill Schofield, the appellant stated that the victim arrived at the hunting club as the appellant was “getting ready to leave” to go to the grocery store. The appellant stated that the victim
“got out [of his truck] and walked over to the truck [the appellant was in] and yanked the door open and yanked me out of the truck. Bill started rumbling on calling me SOB and pushing me. Bill swung at me and I ducked. Bill told me to get my stuff and get my ass on. We were on the driver's side door when the pushing, shoving and arguing took place. ... Bill walked around in front of the pick-up and I reached, I had my jacket and I had my holster. I was getting ready to put my pistol [which was on the seat of the truck] into the holster when I look[ed] at Bill. Bill was reaching down in his pants and I thought he was going for a .22 pistol he’s been known to carry. So I shot [one] time.” R. 119.
In that statement, the appellant claimed that he “only had three beers to drink all day however I will not submit to a breath or blood test to detect my blood alcohol content.” R. 120.
The victim’s brother testified that the victim did not “normally” carry a gun, that he “normally [kept] one in his truck” (R. 135), but that when the victim went hunting, he kept his .22 caliber gun “[r]ight down on his left side” in his pants, (R. 136). There was also evidence presented that afforded the reasonable inference that the victim “normally” carried a pistol.
There was evidence that both the appellant and the victim were intoxicated at the time of the shooting. The victim had a blood-alcohol content of either .131% or .174%, based on which of the two postmortem blood-alcohol tests were considered. R. 139, 145. The defense presented evidence that the victim’s blood-alcohol level was “falling” at the time of his death (R. 145), and that the victim’s blood-alcohol level could have been as high as .14% or .15%, (R. 149).
The appellant testified that the victim “walked up in front of the truck and I heard him say, ‘I’m going to shoot you.’ ’.’ R. 173. The appellant admitted that he did not include this alleged fact in his statement to the deputy. At trial, the appellant testified that the victim then “went like this here (indicating), like he was reaching where he usually kept his pistol” and the appellant “looked up and throwed the pistol up and pulled the trigger.” R. 173-74. The appellant never actually saw the pistol and no pistol was discovered on the victim. The appellant stated that he was not “aiming trying to hit” the victim, that he did not intend to hit or kill him, and that he was “[j]ust trying to scare him so I could get away from him.” R. 175-76.
Admittedly, this is a close case because the appellant did present considerable evidence of self-defense, if the jury found the appellant credible. However, we do not think that the verdict of the jury is due to be overturned because the State did present a prima facie case of unjustified homicide and the jury had cause to question the credibility of the appellant.
*1312 “When the issue [of self-defense] is present, the state must prove that the accused did not act in self-defense in the sense that the state must prove a prima facie case of unjustified homicide. However even if the evidence of self-defense is undisputed, the credibility of the defendant with respect to the evidence of self-defense is for the jury, and they may, in their discretion, accept it as true or reject it.”
Mack v. State, 348 So.2d 524, 529 (Ala.Cr. App.1977).
Here, the State presented evidence affording the reasonable inference that the appellant, without justification, shot and killed an unarmed victim during the course of an argument.
The appellant’s credibility was specifically called in question in this particular case for several reasons. There was evidence that the appellant was intoxicated when he fired the fatal shot. The appellant refused to take a blood-alcohol test and at trial he denied being intoxicated despite considerable evidence to the contrary. The appellant testified that he did not “aim” his pistol at the victim, but a prosecution witness testified that he had observed the appellant “with his hand raised and pointed.” This action, when considered together with the appellant’s statement, “I’m going to do it,” furnishes a reasonable inference that the shooting was intentional and deliberate.
The verdict of the jury is supported by the sufficiency of the evidence. See Townsend v. State, 402 So.2d 1097, 1098-99 (Ala.Cr.App.1981). The weight of that evidence was a question solely for the determination of the jury. See Johnson v. State, 555 So.2d 818, 819-20 (Ala.Cr.App. 1989) (distinguishing “weight” and “sufficiency” of evidence). “ ‘The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision to the jury.’ ... An appellate court may interfere with the jury’s verdict only where it reaches ‘a clear conclusion that the finding and judgment are wrong.’ ” Granger v. State, 473 So.2d 1137, 1139 (Ala.Cr.App.1985); Cox v. State, 585 So.2d 182, 204 (Ala.Cr.App.1991), cert. denied, — U.S.-, 112 S.Ct. 1676, 118 L.Ed.2d 394 (1992).
II.
The undisputed evidence shows that the victim was intoxicated at the time of his death. The appellant argues that his conviction must be reversed because the trial court instructed the jury that it could consider the matter of the victim’s intoxication at the time of the shooting but failed to charge “how the jury was to utilize such intoxication evidence with regard to the matter of self-defense.” Appellant’s reply brief at 4.
In this regard, the trial court charged the jury as follows:
“I charge you, members of the jury, that if you believe from the evidence that at the time of the killing the deceased was under the influence of alcohol you may consider that fact in determining whether or not the defendant acted in self-defense.
“I charge you members of the jury that if there was — if there is 0.10 percent or more by weight of alcohol in a person’s body it should be presumed that the person was under the influence of alcohol. That presumption is a rebutta-ble presumption and may be rebutted by other evidence.” R. 216-17.
The trial court refused to give the appellant’s requested instruction, which stated:
“I charge you, members of the jury, that if you believe from the evidence that the deceased at the time of his death was under the influence of alcohol, and that as a result of being under the influence, the deceased was aggressive, or belligerent, or quarrelsome, then you should consider such facts in determining whether or not the defendant acted in self-defense in killing the deceased, as I have explained the law governing self-defense to you.” CR. 75.
In Quinlivan v. State, 555 So.2d 802, 805 (Ala.Cr.App.1989), and Smith v. State, 594 So.2d 224, 226 (Ala.Cr.App.1991), this Court reversed the convictions of the defendants *1313 because the trial court failed to instruct the jury “on how to utilize the intoxication evidence.” In both of those cases the trial court failed to give any instruction that the jury could consider the intoxication of the victim in connection with his argument of self-defense.
Here, the trial court did instruct the jury that it could consider the victim’s intoxication in determining the existence of self-defense, which is the fundamental legal principle embraced in the appellant’s requested charge. “The refusal of a requested written instruction, although a correct statement of the law, shall not be cause for reversal on appeal if it appears that the same rule of law was substantially and fairly given to the jury in the court’s oral charge or in other charges given at the request of the parties.” Rule 21.1, A.R.Crim.P. This principle applies even where “the actual language of the requested charge is not employed in the oral charge,” and even where the requested charge “may be preferred as a statement of the law over a given charge.” Harris v. State, 513 So.2d 79, 83 (Ala.Cr.App.1987). See also Perryman v. State, 558 So.2d 972, 979 (Ala.Cr.App.1989).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.