KELLUM, Judge.
The appellant, Jerry R. Mills, was indicted by a Franklin County grand jury for murder, a violation of § 13A-6-2, Ala. Code 1975. Following a jury trial, Mills was convicted of manslaughter, a violation of § 13A-6-3, Ala.Code 1975, as a lesser-included offense of murder. The circuit court sentenced Mills to 20 years’ imprisonment and ordered Mills to pay $50 to the crime victims compensation fund and to pay court costs. This appeal followed.
The record indicates the following pertinent facts. Mills and Max Bryant III (“Trey”) went to Leroy Presley’s house looking for a table that Trey’s father, Max Bryant Jr. (“Max”), had borrowed. Max was living with Presley at the time, but the table was not at Presley’s house. Presley suffered from Lou Gehrig’s disease and was confined to a motorized wheelchair. When Mills and Trey entered Presley’s house, Presley confused Mills with another individual with whom Presley was involved in an argument. Presley asked Max, “[i]s this him,” and Max replied, “[n]o, this is not him, Leroy.” (R. 569-70.) According to Mills, Presley became agitated after this exchange; he demanded that Mills and Trey “get the hell out of his house” or he would “show [them] a hogleg.”[1] (R. 571.) Presley was the owner of at least 12 firearms, and Presley was known to be an avid hunter.
After demanding that Mills and Trey leave, Presley grabbed one of the many loaded rifles in his house, pointed it at Mills and Trey, forcing Mills and Trey out the front door. Mills testified that he fled because he “[knew] [Presley was] going to get a gun. [He knew] it [was] time to get out of there.” (R. 572.) Presley followed Mills and Trey out of the house and, according to Mills and Trey, pointed the rifle *1043 in their direction. Max testified that he was worried Presley was going to shoot Mills and Trey. While the gun was pointed in Mills and Trey’s direction, Trey saw Mills reach into the glove compartment of his truck and remove a pistol. At that time, Trey ran to a neighbor’s house.
Mills testified that, when he looked toward the doorway and saw Presley pointing a gun at him, he retrieved his gun from inside his truck. Mills heard a clicking noise, which he believed was “either [Presley] turning the safety off or working the bolt or something on the gun.” (R. 575.) Mills looked up through his car door and saw Presley sitting with the gun aimed directly at him. Mills then fired his weapon four or six times. Once Mills realized Presley was hit, he telephoned emergency services and admitted shooting Presley. By the time emergency vehicles responded to the scene of the shooting, Presley was dead.
Mills raises seven issues for this Court’s review. However, the dispositive issue raised is whether the circuit court failed to adequately charge the jury on self-defense. Before the circuit court instructed the jury on the law applicable to the case, Mills provided the circuit court with the following written “Requested Jury Charge Number 20”:
“I charge you, members of the jury, that if the jury believes from the acts [of] Leroy Presley at the time of his death, that it would have appeared to a reasonable mind, under the circumstances, that he was attempting to execute the threats against Jerry Mills, you may then consider the threats made by Leroy Presley in justification of the homicide.”
(C. 71.) The circuit court refused to give this instruction and instead provided the following general instruction on the law of self-defense:
“I will define for you or read to you the statute as it pertains to self-defense or, at least, the statute that pertains to the pertinent parts of this case. Now, this defense applies to murder and manslaughter. If you find that the defendant acted in self-defense or if you find that the state failed to meet its burden of proving beyond a reasonable doubt that he did not act in self-defense, then this is a defense to murder .and manslaughter.
“It reads: ‘A person is justified in using physical force upon another person in order to defend himself or herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he may use a degree of force which he or she reasonably believes to be necessary for the purpose.’
“A person may use deadly physical force and is legally presumed to be justified in using deadly physical force in self-defense or the defense of another person pursuant to subdivision 4 if the person reasonably believes that another person is, and in this case would be, one, using or about to use unlawful deadly physical force.
“Now, a person who is justified under subsection A in using physical force including deadly physical force and who is not engaged in an unlawful activity and is in any place where he or she has the right to be has no duty to retreat and has the right to stand his or her ground.
“Now, notwithstanding the provisions of subsection A, a person is not justified in using physical force if with intent to cause physical injury or death to another person, he or she provoked the use of unlawful physical force by such other person or, two, he or she was the initial aggressor except that his or her use of *1044 physical force upon another person under the circumstances is justifiable if he or she withdraws from the encounter and effectively communicates to the other person his or her intent to do so, but the latter person, nevertheless, continues or threatens the use of unlawful physical force.
“That is the pertinent parts of the statute as it pertains to self-defense. I will also read to you — and that comes from Alabama Code 13A-3-23. There is another code section that might be useful in this particular case and I will read it. It may be pertinent. It’s 13A-3-25, use of force in defense of premises.
“It reads: ‘A person in lawful possession or control of premises or a person who is licensed or privileged to be thereon may use physical force upon another person when and to the extent that he reasonably believes it’s necessary to prevent or terminate what he reasonably believes to be the commission or attempted commission of a criminal trespass by the other person in or upon such premises.’ ”
(R. 758-60.)
Mills relies on Quinlivan v. State, 555 So.2d 802 (Ala.Crim.App.1989), when he argues that the circuit court’s failure to give his “Written Instruction Number 20” is “clear error” because, he says, this Court and the Alabama Supreme Court have “uniformly held in numerous cases that such a requested jury charge is required to be given under the fact situation presented.” (Mills’s brief, p. 39.) The facts of Quinlivan are instructive for the resolution of the instant case; therefore, those facts will be thoroughly discussed. In Quinlivan the defendant argued that he had killed the victim in self-defense. During the trial, it was established that the victim was skilled with a knife, and that the victim and the defendant had discussed whether it was better to be armed with a knife or a pistol in a one-on-one fight. During the discussion, the victim got the defendant’s gun out of the defendant’s vehicle to examine it. The victim also “put a large knife to [the defendant’s] throat to demonstrate how easily he could cut somebody’s throat.” Quinlivan, 555 So.2d at 803.
The victim and the defendant were drinking alcohol with a large group at the victim’s place of business, but eventually only the victim and the defendant remained at the gathering. When the victim decided to go home, he grabbed his gun and keys and went toward the door. As the defendant was leaving, the victim pulled his knife and said to the defendant, “put the clip in the gun, Mr. Q.” Quinlivan, 555 So.2d at 804. The defendant did so, and the victim said to him, “I’m going to cut you.” Id. The victim advanced on the defendant, and the defendant could not escape without passing the victim. The defendant then fired five shots and fled the scene.
The defendant requested the following written instruction be given to the jury:
“I charge you, members of the jury, that while threats alone will not serve as a justification for homicide, if the jury believes from the evidence that the deceased, at the time of the homicide was manifesting an intention to carry such threats into execution, by a positive act then done, or, that from the acts of the deceased at the time of the homicide, it would have appeared to a reasonable mind, under the circumstances, that the deceased was attempting to execute the threats against the defendant, you may then consider the threats made by the deceased in justification of the homicide.”
Quinlivan, 555 So.2d at 804. The trial court refused to give the defendant’s re *1045 quested instruction, and the defendant was subsequently convicted of manslaughter.
On appeal, this Court reversed the defendant’s conviction on the ground that he was entitled to his requested jury instruction. This Court stated:
“The evidence at trial, both through the [defendant’s statement introduced by the prosecution, and through his own testimony, established the [defendant’s reliance on self-defense as a defense in this case. It was [the defendant’s] contention that just before the fatal shooting, the victim had threatened him and immediately thereafter had overtly menaced him with a knife, giving every indication that he fully intended to harm him with it. This court and the Alabama Supreme Court have uniformly held in numerous cases that the requested jury charge, no. 49 here, is required to be given under the fact situation presented. Williams v. State, 406 So.2d 1053 (Ala.Crim.App.), cert. denied, 406 So.2d 1055 (Ala.1981); Wiggins v. State, 398 So.2d 780 (Ala.Crim.App.), cert. denied, 398 So.2d 783 (Ala.1981); Nelson v. State, 397 So.2d 198 (Ala.Crim.App.), cert. denied 397 So.2d 199 (Ala.1981); Ex parte Traweek, 380 So.2d 958 (Ala.1979); Hunter v. State, 295 Ala. 180, 325 So.2d 921 (1975); Karr v. State, 100 Ala. 4, 14 So. 851 (1893); Gilliam v. State, 50 Ala. 145 (1874).”
Quinlivan, 555 So.2d at 804.
More recently, in Chestang v. State, 837 So.2d 867 (Ala.Crim.App.2001), this Court reaffirmed the holding of Quinlivan, explaining:
“This Court and the Alabama Supreme Court have consistently held that a requested jury instruction, like number 19 here, must be given when there is evidence, no matter how weak, insufficient, or doubtful in credibility, indicating that threats were made by the victim ‘at or about the time of a fatal altercation, as well as when threats are made by a victim prior to an incident causing his death.’ Quinlivan, 555 So.2d at 804. An accused is entitled to such an instruction whenever some evidence of self-defense was offered and some testimony of a threat and its attempted execution was presented. Moreover, the requested jury instruction is required even though the trial court fully and fairly instructed the jury on the general law of self-defense, because the general law of self-defense does not cover the specific situation covered in the requested instruction. See Quinlivan v. State, supra.”
Chestang, 837 So.2d at 874. This Court further noted that it is immaterial if the only evidence supporting the charge was produced by the appellant. See Ex Parte Traweek, 380 So.2d 958, 960 (Ala.1979) (“We hold ... that a charge which is supported by evidence must be given whether the evidence which supports the charge is produced by the defendant or some third party.”).
We have carefully reviewed the record before us. The evidence established that just before Mills shot Presley, Presley demanded that Mills leave his house or he would show him a “hogleg.” When Mills did not immediately leave, Presley grabbed a rifle, forced Mills out of his house at gunpoint, and then aimed the rifle at Mills as Mills went to his truck. Multiple witnesses testified that Presley regularly shot the guns he owned and that he was an avid hunter and marksman. Presley’s behavior was clearly threatening, and Presley could have executed that threat at any time by pulling the trigger. Because the cases cited above indicate that an instruction similar to the one requested by Mills is necessary when “a threat is made by a victim at or about the time of a fatal altercation, as well as when threats are *1046 made by a victim prior to an incident causing his death,” it was necessary for the circuit court to provide an instruction like the one requested by Mills. See Quinlivan, 555 So.2d at 804.
Moreover, the requested jury charge is required even though the circuit court “fully and fairly” instructed the jury on the defense of self-defense, because the general law of self-defense does not cover the fact situation expressed in Mills’s requested charge. See Williams, 406 So.2d at 1054. Accordingly, we have no choice but to conclude that the circuit court erred when it refused to give Mills’s “Requested Jury Charge No. 20” to the jury.
Based on the foregoing, the judgment of the circuit court is reversed, and this case is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
WINDOM, P.J., and WELCH, BURKE, and JOINER, JJ., concur.

. Testimony at trial indicated that the term “hogleg” meant a firearm.