# Karr *v.* The State.

*Indictment for Murder.*

1. *Indictment for murder; evidence of threats.*—Evidence that deceased had made threats against the accused, and was of a violent disposition, did not justify a resort to a deadly weapon, where there was no demonstration of an intent, coupled with ability, to take life or inflict bodily harm.

2. *Same; charge as to character of deceased for violence.*—Where there was evidence that deceased was a violent man, an instruction that, under such circumstances, more prompt measures of defense would be justifiable than if he were of a peaceable disposition, should be given.

3. *Same; threatening letter.*—Evidence that deceased had received a threatening, anonymous letter, in which no reference was made to the defendant, is inadmissible, where there is no evidence connecting him with the sending of the letter, or that he had any knowledge that deceased had received it.

APPEAL from the Circuit Court of St. Clair.

Tried before the Hon. LEROY F. BOX.

John A. Karr was indicted and tried for the murder of Jason Smith, and convicted of murder in the second degree. The evidence, without conflict, tended to show that at the time the said Smith was shot by the defendant he had a gun in his hand, starting up the steps of the defendant's house, but that the gun was not held by the deceased as if he was about to shoot. The evidence further tended to show that the deceased had many times made threats against the defendant and his son, and had declared no longer than the morning that he (the deceased) was killed, that he was going to kill the defendant and his son during the day; that this threat was communicated to the defendant and his son; that at the time of the shooting the defendant and his son were in one of the rooms of defendant's house, and, as the deceased started up the steps, each one of them fired upon him. At the request of the solicitor, the court gave the fol-

[Karr v. The State.]

lowing written charges: (1) "The court charges the jury
that, if the defendant relies on a justification of his acts
partly by threats made against him by Jason Smith before
the killing, then such threats will not, of themselves, be a
justification of the homicide, unless the jury further find
from the evidence that deceased, at the time of the killing,
was manifesting an intention to carry such threats into exe-
cution, by a positive act then done, or that, from the acts of
the defendant at the time of the killing, it would have ap-
peared to a reasonable mind, under the circumstances, that
the deceased was attempting to execute the threats against
defendant." (2) "The court charges the jury that a person
charged with murder, who seeks to justify himself on the
ground of threats against his own life, is permitted to in-
troduce evidence of such threats so made. But the same
should not be regarded as affording a justification for the
killing or offense, unless it be shown that at the time of the
homicide the person killed, by some act then done, mani-
fested an intention to execute the threats so made, or reason-
ably appeared to defendant to be so doing." (3) "The ex-
pression used, in charging the jury, that the jury must find
the defendant not guilty unless the evidence against him
should be such as to exclude to a moral certainty every
hypothesis but that of the guilt of the defendant, as charged,
and that the evidence from the State should be so convinc-
ing as to lead the minds of the jury to the conclusion that
the accused can not be guiltless, are but strong expressions
of that full measure of truth which the law exacts before it
will sanction a conviction of a criminal offense."

To the giving of each of these charges the defendant sev-
erally and separately excepted.

JOHN A. BILLBRO and JOHN W. INZER, for the appellant.

WM. L. MARTIN, Attorney-General, for the State.

STONE, C. J.—The homicide which gave rise to this
prosecution was perpetrated on August 28, 1892, and at the
entrance of defendant's dwelling. There is no conflict in
the testimony on these points. When shot down and killed,
deceased was approaching the door of defendant's home
with a gun in hand, though not raised, or put in position
for shooting. There is testimony that deceased had made
threats against the life of the accused, and that he was a
man of violent and dangerous character. Now, these facts
alone do not, of themselves, justify or excuse an immediate

resort to deadly weapons, on the mere suspicion that life is endangered. There must be some demonstration, or apparent demonstration of an intent, coupled with ability, to take life, or inflict grievous bodily harm, before extreme measures become defensive, and can be resorted to.—*Ex parte Brown*, 63 Ala. 187; *Brown v. State*, 74 Ala. 478; *Roberts v. State*, 68 Ala. 156; *Storey v. State*, 71 Ala. 329; *Rogers v. State*, 62 Ala. 170; *DeArmon v. State*, 71 Ala. 351; *Myers v. State*, 62 Ala. 599. The several charges given at the instance of the State assert correct legal principles, and the Circuit Court did not err in giving them.

The tendencies of the testimony possibly called for an instruction which does not appear to have been given, or asked for. There was testimony, as we have said, tending to show that deceased was a violent and dangerous man. If such was his character and disposition, more prompt and decisive measures of defense would be justifiable than if he were of a peaceable disposition. His character for violence, if found to exist, and previous threats, if believed to have been made, should be weighed by the jury in determining whether the defendant, when he fired the gun, acted under a reasonable apprehension of present, impending peril to his life, or of suffering some other grievous bodily harm.—*DeArmon v. State*, 71 Ala. 351; *Lang v. State*, 84 Ala. 1; *Smith v. State*, 88 Ala. 73.

It was shown that deceased had received an anonymous letter about two months before the homicide occurred. It came through the mail, and was both threatening and abusive. There was no attempt to connect the defendant with the authorship of the letter, or to show that he had any agency in getting it up, or in sending it. It made no reference whatever to the defendant, or to any subject of the quarrel, disagreement, or other relations between him and the deceased. This anonymous letter was offered in evidence by the prosecution, objected to by the defendant, the objection overruled, and the letter was read to the jury. The defendant excepted. In receiving this evidence the Circuit Court erred.

If this testimony was offered as a reason why the deceased was bringing home a gun at the time he was fired on, there are two reasons why it was improper for that purpose: First, it was too long after the receipt of the letter to authorize the inference that the threats it contained prompted the defendant to arm himself, there being near two months between the time he received the letter and the time it appears he obtained the gun. Second, there is no attempt to show that

[Lawson et al. v. The State.]

defendant had any knowledge or notice that deceased had received such letter. In the absence of such notice, even if such was the reason why deceased was armed, defendant's legal accountability must be tested and determined without any reference whatever to that letter. But we must not be misunderstood. What we have said in this connection is only important in making the inquiry whether defendant, at the time he fired the gun, had reasonable ground for believing, and did believe, it was necessary for him to kill Smith, in order to preserve his own life, or to save himself from grievous bodily harm. If the jury fail to find this to be the case, the plea of self-defense is not made good. We will add, the defendant being in his own domicil, was not bound to retreat.

The court erred also in receiving testimony that defendant took "a drink" on the night preceding the homicide. We find no other errors.

Reversed and remanded.