837 So.2d 867 (2001)
Vernon M. CHESTANG
v.
STATE of Alabama.
CR-00-0130.
Court of Criminal Appeals of Alabama.
September 28, 2001.
Rehearing Denied November 21, 2001.
Certiorari Denied May 31, 2002.
*868 Dennis K. Knizley, Mobile; and Louis Daniel Mims, Mobile, for appellant.
Bill Pryor, atty. gen., and E. Vincent Carroll, deputy atty. gen., for appellee.
Alabama Supreme Court 1010517.

On Return to Remand
SHAW, Judge.
The appellant, Vernon M. Chestang, was indicted for intentional murder, a violation *869 of § 13A-6-2(a)(1), Ala.Code 1975. A jury found him guilty of the lesser-included offense of reckless manslaughter, see § 13A-6-3(a)(1), Ala.Code 1975. The appellant was sentenced to 20 years' imprisonment. We reverse and remand.[1]

I.
The appellant contends that the trial court erred in denying his motion for a judgment of acquittal made at the close of the State's case because, he says, "the State had failed to prove each and every material allegation of the indictment and further, that a reasonable jury could not reasonably conclude the State had proved beyond a reasonable doubt that he had not acted in self-defense." (Appellant's brief at p. 16.) The appellant specifically argues that the State's evidence failed to prove a prima facie case of murder and, therefore, that his conviction should be reversed and a judgment rendered in his favor. We hasten to point out, however, that the appellant was not convicted of murder. Although the indictment charged him with murder, the jury found the appellant guilty of the lesser-included offense of reckless manslaughter. Therefore, manslaughter is the only charge subject to appellate review. See, e.g., McCain v. State, 611 So.2d 1123, 1124 (Ala.Crim.App.1992) ("The charge upon which the conviction rests is the only charge that is subject to appellate review."). See also Williams v. State, 695 So.2d 644 (Ala.Crim.App.1996); and Gagliardi v. State, 695 So.2d 206 (Ala. Crim.App.1996). The appellant does not argue on appeal the sufficiency of the evidence to sustain his conviction for manslaughter; therefore, there is nothing for this Court to review.[2] However, even assuming, arguendo, that the sufficiency issue were before this Court for review, we would decide it adversely to the appellant.
"`In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.'" Ballenger v. State, 720 So.2d 1033, 1034 (Ala. Crim.App.1998), quoting Faircloth v. State, 471 So.2d 485, 488 (Ala.Crim.App.1984), aff'd, 471 So.2d 493 (Ala.1985). "`The test *870 used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.'" Nunn v. State, 697 So.2d 497, 498 (Ala. Crim.App.1997), quoting O'Neal v. State, 602 So.2d 462, 464 (Ala.Crim.App.1992). "`When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and in such a case, this court will not disturb the trial court's decision.'" Farrior v. State, 728 So.2d 691, 696 (Ala.Crim.App.1998), quoting Ward v. State, 557 So.2d 848, 850 (Ala.Crim.App.1990). "The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury." Ex parte Bankston, 358 So.2d 1040, 1042 (Ala.1978). (Emphasis in Bankston.)
The evidence adduced at trial showed that Donald Eckoff, Sr., died on August 7, 1999, as a result of a gunshot wound to the heart, which he sustained during an argument with the appellant. The State presented evidence indicating that earlier that same evening, Eckoff and the appellant had exchanged insulting gestures and had engaged in a verbal altercation as the appellant left his driveway and passed Eckoff's home. The appellant and Eckoff had been neighbors for approximately two years. From the date Eckoff had purchased the property he lived on from the appellant's ex-wife, the two men had a history of trading insults and obscene gestures. Testimony revealed that Eckoff also had a similar history with other neighbors.
On August 7, 1999, after the appellant returned home, he and Eckoff, who was outside securing his vehicle and putting away a garden hose, again engaged in verbal sparring. Although there were no eyewitnesses to this second argument, there is no dispute that during this argument, the appellant shot and killed Eckoff.
After he shot Eckoff, the appellant telephoned emergency 911, summoning police and medical assistance. A .22 caliber revolver was found on a couch in the living room of the appellant's home. The appellant asserted that Eckoff had charged him while Eckoff was reaching into his pocket. He claimed that he shot Eckoff in self-defense. It was later determined that Eckoff was unarmed during the confrontation that led to his death.
Officer Armond Campbell of the Mobile Police Department responded to the incident. He testified that he was dispatched in response to a complaint by a person who stated that he had shot his neighbor. According to Officer Campbell, when he arrived at the scene, he saw Eckoff lying in the yard, and was told by a neighbor that the appellant was inside his home. He stated that the appellant gave a statement in which he admitted "that he had shot his neighbor and that his neighbor was always messing with him." (R. 336.) Officer Campbell testified that the appellant informed him that Eckoff had "charged" and had reached into his pocket, and that he believed that Eckoff was going to pull a gun. (R. 339, 342.) Officer Campbell also testified that the appellant stated that he had called the police as a result of Eckoff's behavior on at least four occasions, and that Eckoff had previously threatened him with a weapon. According to Officer Campbell, the appellant indicated that he had not intended to kill Eckoff, and "that he hoped the guy was all right." (R. 339-40.)
Section 13A-6-3(a)(1), Ala.Code 1975, provides, in pertinent part, that "[a] person commits the crime of manslaughter if *871 ... [h]e recklessly causes the death of another person...." "A person acts recklessly with respect to a result or to a circumstance ... when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists." § 13A-2-2, Ala.Code 1975.
There is no dispute that the appellant caused Eckoff's death. Based on the evidence presented at trial, the jury could have reasonably concluded that the appellant recklessly caused Eckoff's death by firing at him with a pistol. Although the appellant claimed that he acted because he believed Eckoff was reaching for a weapon, the evidence at trial revealed that Eckoff was, in fact, unarmed. In most cases, the issue of self-defense is one of ultimate fact for determination by the jury. King v. State, 478 So.2d 318 (Ala.Crim.App. 1985). "`Where, as here, the killing was admitted, the question of whether or not it was justified under the theory of self-defense was a question for the jury.'" Quinlivan v. State, 627 So.2d 1082, 1087 (Ala.Crim.App.1992), quoting Townsend v. State, 402 So.2d 1097, 1098 (Ala.Crim.App. 1981).
Moreover, we note that any "inconsistencies and contradictions in the State's evidence, as well as [any] conflict between the State's evidence and that offered by the appellant, [goes] to the weight of the evidence and [creates a question] of fact to be resolved by the jury." Rowell v. State, 647 So.2d 67, 69-70 (Ala.Crim.App. 1994). "`"[T]he credibility of witnesses and the weight or probative force of testimony is for the [trier of fact] to judge and determine."'" Johnson v. State, 555 So.2d 818, 820 (Ala.Crim.App.1989), rev'd on other grounds, 576 So.2d 1281 (Ala. 1991), quoting Harris v. State, 513 So.2d 79, 81 (Ala.Crim.App.1987), quoting, in turn, Byrd v. State, 24 Ala.App. 451, 136 So. 431 (1931). "We have repeatedly held that it is not the province of this court to reweigh the evidence presented at trial." Johnson, 555 So.2d at 820. Furthermore, "`[t]his Court must view the evidence in the light most favorable to the State, and "draw all reasonable inferences and resolve all credibility choices in favor of the trier of fact."'" D.L. v. State, 625 So.2d 1201, 1204, (Ala.Crim.App.1993), quoting Woodberry v. State, 497 So.2d 587, 590 (Ala.Crim.App.1986).
We conclude that the evidence was sufficient to submit the reckless manslaughter charge to the jury. The evidence, if believed by the jury, could reasonably support a finding that the appellant recklessly caused Eckoff's death, see Johnson v. State, 571 So.2d 375, 377 (Ala.Crim.App. 1990), cert. denied, 596 So.2d 656 (Ala. 1991), and it was sufficient to refute the appellant's claim of self-defense and to warrant sending the issue to the jury. Therefore, the trial court did not err in denying the appellant's motion for a judgment of acquittal.

II.
The appellant also argues that the trial court failed to adequately charge the jury on self-defense and, therefore, that he is entitled to a new trial. Specifically, he argues that the trial court erred in denying his written requested jury instruction number 19, which read as follows:
"While threats alone will not serve as a justification for homicide, if the jury believes from the evidence that the deceased, at the time [of] the homicide was manifesting an intention to carry such threats into execution, by a positive act then done or, that from the acts of the deceased at the time of the homicide, it would have appeared to a reasonable mind, under the circumstances, that the deceased was attempting to execute the *872 threats against the defendant, you may then consider the threats made by the deceased in justification of the homicide."
(C. 35.)
Despite his concession that the trial court accurately charged the jury on the general law of self-defense, the appellant contends that under the authority of Quinlivan v. State, 555 So.2d 802 (Ala.Crim. App.1989), cert. quashed as improvidently granted, 596 So.2d 658 (Ala.1991), the trial court's instructions nevertheless "fail[ed] to emphasize properly the state of mind of the defendant at the time of the fatal altercation, and the possibility that the prior or contemporaneous threats of the deceased would have impacted the defendant's state of mind." (Appellant's brief at p. 15.) We agree.
The appellant argues that the facts in the present case fall under the rule stated in Quinlivan, a case in which this Court determined that a defendant was entitled to an instruction virtually identical to the one requested by the appellant. In Quinlivan, the appellant argued that immediately before he fatally shot the victim, the victim had threatened him with a knife under circumstances indicating the victim's intent to harm him with the knife. The State argues that Quinlivan is not controlling because, it says, there is no evidence in this case indicating that Eckoff threatened the appellant on the day of the fatal altercation. As previously noted, however, the record here indicates that the appellant and Eckoff were neighbors and that their relationship was very hostile. There is no dispute that the appellant and Eckoff had a long history of trading insults, including an altercation earlier on the day of Eckoff's death when Eckoff had threatened the appellant with bodily harm.
In support of his argument that he believed a threat existed, the appellant points to testimony by two witnesses for the prosecution. Darren Eckoff, Eckoff's son, testified that earlier in the evening on the day of his father's death, Eckoff and the appellant had had an altercation during which both parties called each other names and exchanged insulting gestures. Darren Eckoff stated that during that altercation Eckoff had told the appellant several times to "get out of the truck," so that "he could have a physical confrontation with him." (R. 217.) This exchange took place while Eckoff and his family were standing in the driveway of Eckoff's home and the appellant and his girlfriend were stopped in the appellant's vehicle at the end of Eckoff's driveway. (R. 200.) It appears from the record that the appellant instigated this confrontation by making an obscene gesture toward Eckoff and his family, and that the appellant's language was as insulting as that used by Eckoff. Furthermore, the appellant's reply that "if [he] got out of the truck, [Eckoff would] lose," was as threatening as Eckoff's demand for the appellant to exit his vehicle. Even so, the evidence indicating that Eckoff challenged the appellant to get out of his vehicle at least created an inference for the jury that Eckoff had threatened the appellant with bodily harm. More importantly, however, there was additional evidence that Eckoff had made remarks at a real estate closing approximately two years before Eckoff's death indicating that he had made a death threat against the appellant.
Fannie Beck Wilson, the real estate agent present at the closing at which Eckoff purchased the property adjacent to the appellant, testified:
"Q. All right, Ms. Wilson, at the closing on October 28, 1997, tell the jury everything you heard Mr. Eckoff say about Vernon Chestang.

*873 "THE WITNESS: ... I recommended to the other agent to get please, get a survey. I was not sure where the corners were. They did.
"Q. And what happened?
"A. They had pulled a line from the back to the front corner.
"Q. Who had pulled a line?
"A. I'm assuming Mr. Eckoff.
"Q. Okay. And did y'all discuss that at the closing?
"A. Yes.
"Q. And what was discussed about the line?
"A. He said he told Mr. Chestang that if he ever crossed that line, he would give him three choices, he would shoot, he would cut him half [in two] with a chain saw or he would do something and throw him in the river and I don't remember what the something else was."

(R. 421-22.) (Emphasis added.) There was also testimony from Eckoff's wife, who was present at the closing, that Eckoff never stated that he had made such threats against the appellant.
Finally, the record indicates that Officer Campbell testified as follows with respect to his questioning of the appellant immediately after the shooting:
"Q. Okay. Did he tell you that Mr. Eckoff reached in his pocket?
"A. Yes, sir.
"Q. And did he tell you that he thought Mr. Eckoff was going for a gun?
"A. Yes, sir.
"Q. And did he tell you that because he thought he was going for a gun, Mr. Chestang shot him to defend himself?
"A. He saidwhat did he say?
"Q. Yeah.
"A. He said he shot him because he reached into his pocket and he didn't know what to do.
"Q. Okay.
"A. And he didn't know what, you know, he was going for. He figured he might have been going for a gun, so he didn't know what to do.
"Q. Did he tell you that he had called the police against Mr. Eckoff on at least four occasions?
"A. Yes, sir.
"Q. Did he specifically tell youhe, Mr. Eckoff, charged towards Mr. Chestang and reached into his pocket?
"A. Yes, sir, he told me that.
"Q. Did he tell you that Mr. Eckoff had pointed a weapon at him in the past?

"A. I think he said that he had showed himthreatened him with a gun or showed him a gun in the past.

"....
"Q. Officer, do you rememberlet me make sure I got the record straight on this. Do you remember, specifically, whether he told you that the victim hadMr. Eckoff had pointed a gun at him in the past?
"A. I remember him telling me that he had shown a gun to him while he was threatening him, but I can't remember him telling me that he pointed it.
"Q. Let me show you a
"THE COURT: Just a moment.
"(BRIEF PAUSE.)
"Q. Let me show you a document and ask you if you can identify that document for us?
"A. Yeah, this is my narrative.
"Q. All right. Is that in your handwriting?
"A. Yes, sir.

*874 "Q. And is that a document that you routinely prepare in connection with cases that you're assigned to?
"A. Yes, sir.
"Q. All right. Let me show you a place on here and ask you to read this to yourself and then I'll ask you, again, starting right there.
"A. (Witness complies.) Right.
"Q. Read that sentence to us, starting with the word, subject.
"A. Okay. Subject said that the victim has pointed a weapon at him before. Subject did not call the police.
"Q. All right. So it said, subject said the victim has pointed a weapon at him before, but the subject did not call the police, correct?
"A. Yes, sir.
"Q. All right. So now that you've read that, do you now remember that he did say that Mr. Eckoff had pointed a gun at him rather than just showing a gun to him?

"A. Yes, sir."
(R. 338-41.) (Emphasis added.)
This Court and the Alabama Supreme Court have consistently held that a requested jury instruction, like number 19 here, must be given when there is evidence, no matter how weak, insufficient, or doubtful in credibility, indicating that threats were made by the victim "at or about the time of a fatal altercation, as well as when threats are made by a victim prior to an incident causing his death." Quinlivan, 555 So.2d at 804. An accused is entitled to such an instruction whenever some evidence of self-defense was offered and some testimony of a threat and its attempted execution was presented. Moreover, the requested jury instruction is required even though the trial court fully and fairly instructed the jury on the general law of self-defense, because the general law of self-defense does not cover the specific situation covered in the requested instruction. See Quinlivan v. State, supra. See also Ex parte Traweek, 380 So.2d 958 (Ala.1979); Hunter v. State, 295 Ala. 180, 325 So.2d 921 (Ala.1975); Karr v. State, 100 Ala. 4, 14 So. 851 (1894); Nelson v. State, 397 So.2d 198 (Ala.Crim.App.1981); Wiggins v. State, 398 So.2d 780 (Ala.Crim. App.1981); Williams v. State, 406 So.2d 1053 (Ala.Crim.App.1981). It does not appear that the requested instruction would be necessary based solely on the evidence of the earlier altercation that took place on the day of Eckoff's death. Although a jury could infer that Eckoff had threatened the appellant with some form of bodily harm, the evidence did not indicate that Eckoff had threatened the appellant with a weapon or had otherwise threatened the appellant with deadly physical force. However, the evidence indicating that Eckoff had previously threatened the appellant with a gun, or had otherwise made death threats against the appellant, bring the case within the rule stated in Quinlivan and the cases on which that decision was based.
On the authority of the cases cited above, the appellant's conviction is due to be reversed and the case remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
McMILLAN, P.J., and COBB and BASCHAB, JJ., concur. WISE, J., dissents, with opinion.
WISE, Judge (dissenting).
I respectfully dissent from the majority opinion reversing Chestang's conviction on the basis that the trial court refused to give an instruction on self-defense requested by Chestang and the instruction the trial court gave on self-defense "does not *875 cover the specific situation covered in the requested instruction." 837 So.2d at 874. In my opinion, the evidence did not support Chestang's requested additional charge on self-defense. Based on the facts of this case, I do not believe that Eckoff's remarks to Chestang on the day of the fatal altercation constituted a threat; thus I believe this case is distinguishable from Quinlivan v. State, 555 So.2d 802 (Ala. Crim.App.1989), relied upon by the majority. Therefore, I dissent.
NOTES
[1] By order issued on July 13, 2001, this Court remanded this cause to the trial court for that court to clarify whether it had applied the firearm-enhancement statute in sentencing the appellant. See § 13A-5-6(a)(5), Ala.Code 1975. One of the issues presented by the appellant was that the trial court had "inappropriately applied the firearm enhancement statute in determining [his] sentence." (Issue III in the appellant's brief at p. 20). See, e.g., Ex parte McCree, 554 So.2d 336 (Ala. 1988) (holding that the firearm-enhancement statute does not apply to convictions for reckless manslaughter); and Railey v. State, 710 So.2d 477 (Ala.Crim.App.1996), cert. quashed as improvidently granted, 710 So.2d 479 (Ala.1998) (same). The appellant conceded in his brief that "the record [wa]s unclear as to whether [he] was sentenced pursuant to the firearm enhancement statute." (Appellant's brief at p. 22.) On return to remand, the trial court has submitted an order indicating that it did not apply the firearm-enhancement statute to the appellant's sentence. The appellant's sentence of 20 years was within the statutory range for reckless manslaughter. See § 13A-6-3(b), Ala.Code 1975 (defining reckless manslaughter as a Class B felony); and § 13A-5-6(a)(2), Ala.Code 1975 (setting the punishment for Class B felonies at "not more than 20 years or less than 2 years"). Therefore, the appellant's claim that the trial court improperly applied the firearm-enhancement statute is meritless.
[2] We note that the appellant did challenge the sufficiency of the evidence to sustain his conviction for manslaughter in the trial court; he filed a posttrial motion for a judgment of acquittal, specifically alleging that the State failed to present sufficient evidence to establish reckless manslaughter.