BURKE, Judge.
The appellant, Asher Bragan Bole, was convicted of one count of manslaughter,[1] a violation of § 13A-6-3, Ala.Code 1975. Based on one prior felony conviction, he was sentenced to 40 years’ imprisonment. Additionally, he was ordered to pay a crime victim assessment in the amount of $50.
*1090 The evidence established that on the evening of July 25, 2008, Andra Johnson picked Tiffany Smith up from her home in Bessemer, and the two of them went to Johnson’s home in Center Point. Around the time they were to return to Bessemer, Johnson received a telephone call from one of Johnson’s friends, Asher Bole. Bole came over to Johnson’s home for about 20 minutes and the three then left to take Smith home to Bessemer.
Smith was not acquainted with Bole. She testified that as she was getting into the front passenger seat of Johnson’s vehicle, she saw that Bole was carrying a pistol. As Bole sat down in the backseat, he placed the pistol in his lap. There were no harsh words between the two men in the car; in fact they had made prior plans to go to a club together after they took Smith home.
At a stop sign near Smith’s house, Johnson stopped his vehicle to let her out, because Smith did not want her husband to know that she had been in the company of the two men. As Smith got out of the car, she saw Bole getting out of the backseat to ride in the front passenger seat. He had the pistol in his hand and jokingly said, “Give me your shit, nigger.” (R. 99.) The gun suddenly discharged and Johnson was shot in the head. Bole became nervous, panicked, and, according to Smith, gestured with the pistol for Smith to come to where he was standing. Bole grabbed Smith by the shirt and dragged her down the street. He pulled her into a bank of bushes, pointed the gun to her face and said, “[D]id you see what happened? Do you know me? Did you see this?” (R. 100.) Smith indicated that she had not, and Bole said that if she cooperated, she would be okay. Bole left Smith in the bushes and returned to Johnson’s Ford Explorer sport-utility vehicle. Smith ran to a nearby Conoco gasoline service station where she asked a woman to drive her back to the scene. When they arrived, Johnson’s body was in the middle of the road.
Bole was arrested near the scene; he later gave two statements admitting that he shot Johnson but that he did not intend to. He stated that he threw the gun in the bushes and was afraid to stay with the victim.
Autopsy results revealed that Johnson’s cause of death was a gunshot wound to the head, and that the handgun that inflicted the wound was fired from a distance of at least 18 inches.
Bole testified in his own defense. He stated that he shot Johnson but that it was an accident. He testified that he and Johnson were close friends and that the gun fired when he attempted to stand and lost his balance. Bole testified that after hearing a loud bang, he ran into some bushes. He stated that Smith followed him into the bushes to ask him what happened. He did not remember having the pistol in his hand when he was talking to Smith.
I.
On appeal, Bole argues that the trial court erred when it allowed the State to offer evidence of his prior conviction of shooting into an occupied dwelling, because the detailed evidence was outside the stipulation or agreement the parties had entered into before the trial. Bole argues that the State exceeded the limitation of the evidence to be allowed concerning this prior offense, specifically that he admitted to having committed it. In particular, Bole argues that the admission of evidence that a child was present at the scene of his prior offense violated Rule 404(b), Ala. R. Evid. and Rule 609, Ala. R. Evid.
*1091 First we address Bole’s claim that the trial court committed reversible error when it allowed the State to delve into details of his prior conviction for discharging a firearm into an occupied dwelling as having violated Rule 404(b), Ala. R. Evid.
The record reveals that on September 9, 2009, the State filed a notice of intent to introduce evidence pursuant to Rule 404(b), Ala. R. Evid., notifying Bole that it intended to offer evidence that “on April 27, 2001, [Bole] pleaded guilty to Discharging a Firearm into an Occupied Building and was sentenced to Fifteen years to serve in prison.” (C. 40.) On September 15, 2009, immediately before trial, the State argued its motion to be permitted to offer the Rule 404(b) evidence, stating that proof of the prior offense would show Bole’s knowledge pertaining to the use and functioning of firearms and knowledge of the risk associated with them. After an extensive discussion on the record, the parties stipulated that the State would limit its Rule 404(b) evidence of Bole’s prior conviction to testimony that Bole had fired a gun into an occupied dwelling in order to show Bole’s knowledge of firearms and to testimony that Bole had admitted to having fired a gun into an occupied dwelling. The agreement also required Bole to refrain from offering evidence of the victim’s prior criminal convictions other than to allow testimony to show that the victim and Bole had met while in prison.
The following is the exchange regarding the stipulation between the attorneys and the court prior to trial:
“THE COURT: How do you intend to prove it [that he knows how to operate a gun]?
“[Prosecutor]: My way of doing it would be introducing the prior felony conviction. I don’t have to do it that way, but that’s the simplest way of doing it. With [Rule] 404(b) evidence I can prove — I can bring the witnesses from the earlier case if I want to. I’m not going to do it that way.
“THE COURT: I understand that.
“[Prosecutor]: If you want me to avoid a felony — mentioning a felony, I can get the detective to testify to it.
“THE COURT: To the—
“[Prosecutor]: I would basically ask are you aware that he has a prior conviction for shooting a firearm into an occupied dwelling. Yes. We don’t have to go into what he’s sentenced for, or anything like that, whether it’s a felony or anything like that. But because of the facts in this case knowledge of the firearm and how — what happens when you pull a trigger. He knows. And they deserve to know that he knows. It’s not common sense.”
(R. 8.)
Later in the exchange, the parties apparently come to an agreement as to what the stipulation will be:
“[Defense counsel]: Are you aware [Bole] admitted to firing a gun into an occupied — in the past [Bole] admitted to firing a gun into an occupied dwelling.
“[Prosecutor]: I will live with that, but that doesn’t carry the same weight as pleadfed] guilty. Admitted in court.
“THE COURT: I understand that. But the — are you offering it for the weight to show that he was convicted or the fact that he knows the—
“[Prosecutor]: Obviously that he knows. I don’t want to have to prove that again. Are they going to be able to go back and deny that he admitted doing that.
“[Defense counsel]: No.
“[Prosecutor]: Is that a factual issue that we fight?
*1092 “[Defense counsel]: We do not contest the fact that he admitted to having fired a gun into an occupied dwelling.
“THE COURT: So we have a stipulation on that?
“[Prosecutor]: Yes.
“THE COURT: That wording.”
(R. 11-12.)
Thereafter, before the cross-examination of Bole, the State asserted that it planned to offer a certified copy of his conviction and sentence for discharging a firearm into an occupied dwelling. Bole objected on the ground that the document included references to another charge or other charges that had been dismissed[2] and that its admission would violate the stipulation that the parties had entered on the issue. The parties agreed to redact the references to the other charges in the documents and the trial court then stated that the exhibit “has been offered with certain redactions that we have discussed as to a separate crime that the document speaks to. It is admitted. And it will go back to the jury room in its altered form.” (R. 192.) The stipulation of the parties referred to matters that the State could properly present in its case-in-chief pursuant to its Rule 404(b) motion and did not contemplate or limit the State’s ability to impeach Bole when he chose to take the witness stand. When the State cross-examined Bole, the prosecutor asked Bole how he had obtained the gun used to kill Johnson. Bole responded that he gotten it from a friend for his personal safety because someone had threatened him. Bole acknowledged that he knew that he was not supposed to have a gun because he had previously been in prison. He admitted he had been in prison for discharging a firearm into a house. The State then offered into evidence the certified court record reflecting Bole’s conviction over Bole’s renewed objection. The prosecutor then asked Bole several questions about the previous incident, including whether he had intended to kill anyone or had acted recklessly. Bole replied that the man he had shot at had robbed a friend; he also testified that he had shot at the man because the man was armed. The prosecutor asked Bole if he was aware that the man’s little girl was in the house at the time of the shooting. Bole stated that he had learned about the child’s presence only after the fact. At no time did defense counsel make any objection during the testimony.
A trial court is given broad discretion in the determination of admissibility of evidence, despite the prohibition of Rule 404(b), Ala. R. Evid.
Rule 404(b), Ala.R.Evid., provides:
“Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.”
“The foregoing exclusionary rule does not work to exclude evidence of all crimes or acts, only such as are offered to show the defendant’s bad character and conformity therewith on the occasion of *1093 the now-charged crime. If the defendant’s commission of another crime or misdeed is relevant for some other material purpose in the case then it may be admitted.” Charles W. Gamble and Robert J. Goodwin, McElroy’s Alabama Evidence, § 69.01(1) (6th ed.2009)(footnotes omitted). In determining whether the proposed evidence is admissible under one of the exceptions to the exclusionary rule, the question is whether the evidence is relevant to a material issue in the charged case. Bradley v. State, 577 So.2d 541, 547-48 (Ala.Crim.App.1990). See also Gamble v. State, 791 So.2d 409 (Ala.Crim.App.2000); and Perkins v. State, 808 So.2d 1041 (Ala.Crim.App.1999), affirmed, 808 So.2d 1143 (Ala.2001). Rule 401, Ala. R. Evid., defines relevant evidence as “evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” “ ‘All evidence is relevant which throws, or tends to throw, any light upon the guilt or the innocence of the prisoner.’ ” Nicks v. State, 521 So.2d 1018, 1026 (Ala.Crim.App.1987), aff'd, 521 So.2d 1035 (Ala.), cert. denied, 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 948 (1988), quoting Underhill, Criminal Evidence, § 154 (3d ed.1923). “The appellate courts of Alabama have sanctioned a liberal test of relevancy under which evidence is admissible if it has any probative value, however slight, upon a matter in the case.” Gamble & Goodwin, McElroy’s Alabama Evidence, § 21.01(1). Moreover, “[t]he decision to allow or to not allow evidence of collateral crimes or acts as part of the state’s case rests in the sound discretion of the trial court.” Bush v. State, 695 So.2d 70, 85 (Ala.Crim.App.1995), affirmed, 695 So.2d 138 (Ala.1997), cert. denied, Bush v. Alabama, 522 U.S. 969, 118 S.Ct. 418, 139 L.Ed.2d 320.
Although Rule 404(b) does require the trial court to exclude evidence of other crimes or bad acts committed by a defendant as character evidence, such evidence may be admissible under certain circumstances. Here, the record reveals that the trial court admitted the evidence of Bole’s shooting into an occupied dwelling, finding that the evidence was relevant and admissible to show Bole’s knowledge of firearms and his understanding of the risk of handling a firearm. Hence, the trial court did not err when it admitted the evidence under an exception to the general exclusionary rule.
Moreover, Bole’s argument on appeal that the State exceeded the limitation of the stipulation by allowing evidence concerning the details of the offense, particularly the prosecutor’s questions concerning Bole’s knowledge that the daughter of the intended victim had been present, was admitted without objection. His objection that the document improperly referred to other charges did not preserve this matter for appeal. Cf. Pace v. State, 766 So.2d 201, 202-03 (Ala.Crim.App.1999). Therefore, that issue is waived.
Bole’s argument that the State was allowed to admit detailed evidence concerning the child’s presence at the scene of the prior offense, in violation of Rule 609, Ala. R. Evid., when Bole took the witness stand in his own defense is being raised for the first time on appeal. During the State’s cross-examination, Bole made no objection on the grounds he now raises on appeal. Newsome v. State, 570 So.2d 703, 717 (Ala.Crim.App.1989) (“Review on appeal is restricted to questions and issues properly and timely raised at trial.”) See also Smoot v. State, 520 So.2d 182, 186-87 (Ala.Crim.App.1987). Generally, an objection to the introduction of evidence is necessary before an issue may be presented to an appellate *1094 court. Ex parte Jackson, 33 So.3d 1279, 1283 (Ala.2009) (“ ‘ “An appellant who suffers an adverse ruling on a motion to exclude evidence, made in limine, preserves this adverse ruling for post-judgment and appellate review only if he objects to the introduction of the proffered evidence and assigns specific grounds therefor at the time of the trial, unless he has obtained the express acquiescence of the trial court that subsequent objection to evidence when it is proffered at trial and assignment of grounds therefor are not necessary.’””). This Court cannot consider matters which have not been first presented to the trial court. Trawick v. State, 431 So.2d 574 (Ala.Crim.App.1983). Because Bole failed to make a timely and specific objection at trial, this claim that the evidence violated Rule 609, Ala. R. Evid., is precluded from appellate review.
II.
Bole argues that the trial court committed reversible error when it allowed the State to provide an inaccurate transcript of his statement to the jury for its use while it listened to an audiotape of the statement. Bole objected on the grounds that the transcript contained errors; the trial court sustained Bole’s objection, and the transcript was taken from the jurors.
The record reveals that Detective Jeff Robinson testified that Bole made a statement to him after being informed of his constitutional rights. A tape recording of that statement was admitted into evidence and played for the jury. Because the sound quality of the audiotape was not good, the State indicated a typed transcript was available, although the transcript was “not perfect.” After a bench conference, the Court directed the jury to read the transcript but to go by what was on the audiotape, disregarding the transcript if there was any discrepancy between the two. The court also instructed the jury that it could not take the typed transcript into the jury room with it.
The audiotape was played again, and defense counsel objected outside of the hearing of the jury. Defense counsel stated that his objection was based on various inaccuracies in the transcript and on the basis that a copy of the transcript had not been provided to the defense during discovery. The court sustained the objection and removed the transcripts from the jury box.
The trial court then gave the jury the following curative instructions:
“Ladies and gentlemen, while you were out of the room there was an objection made and the Court ruled on it. The written transcript you had you no longer have. So, don’t look for it under your chair. It is not a matter of you misplacing it. I had it taken up.
“What you have heard up until now and what you have read, I want to instruct you at this point in time that you’re, of course, to take what you heard over what you read.
“And it was my understanding there was parts of it that was not audible, but once we started playing it, everybody, both attorneys and myself, realized that there were words in there that didn’t match up with what I could understand was being said. So, the rest of it is going to be played to you without the written transcript or the written version of what was said.
“And what you have heard, disregard what you read on the paper if you heard something different on the tape. Thank you.”
(R. 145-46.)
After the trial court gave these instructions, Bole did not renew his objection to *1095 the transcript in a motion for a mistrial or ask the court for more extensive curative instructions as he now argues on appeal were necessary. In the absence of an adverse ruling, this issue is not properly before us for appellate review.
Based on the foregoing, we conclude that Bole failed to preserve the issue of the flawed transcript for appellate review by not invoking an adverse ruling from the trial court. Newsome v. State, 570 So.2d 703, 717 (Ala.Crim.App.1989) (“Review on appeal is restricted to questions and issues properly and timely raised at trial.”). In order to preserve an alleged error, “a timely objection must be made ..., specific grounds for the objection should be stated, and a ruling on the objection must be made by the trial court.” Shouldis v. State, 953 So.2d 1275, 1284 (Ala.Crim.App.2006.) Harris v. State, 563 So.2d 9, 11 (Ala.Crim.App.1989)(an adverse ruling is necessary in order to preserve an issue for appellate review).
III.
Bole next contends that the trial court abused its discretion and committed reversible error by imposing a punishment on him that was vindictive because Bole refused to agree to a plea bargain and insisted on going to trial. Bole argues that, if that was the reason the trial court entered the punishment in his case, his constitutional rights were violated. However, although Bole file a motion to reconsider his sentence, Bole did not raise at trial the claim he now raises and has failed to preserve this issue for appellate review.
Because Bole’s sentence is within the proper statutory range, Bole’s claim is not jurisdictional. Manslaughter is a Class B felony. § 13A-6-3, Ala.Code 1975. Bole had one prior felony conviction, and the sentencing range for a Class B felony with one prior felony conviction is for life or not more than 99 years or less than 10 years. Additionally, § 13A-5-6(a)(5), Ala.Code 1975, states that when a deadly weapon is used in the commission of a Class B felony, the sentencing range is not less than 10 years. Bole was sentenced to 40 years’ imprisonment. Thus, the sentence imposed by the trial court falls within the statutory range. A decision on sentencing is well within the broad discretion of the trial court. Where a trial judge imposes a sentence within the statutory range of punishment, this Court will not review that sentence. See Sinkfield v. State, 669 So.2d 1026, 1028 (Ala.Crim.App.1995); Garner v. State, 606 So.2d 177, 182 (Ala.Crim.App.1992); Harris v. State, 500 So.2d 1292, 1296 (Ala.Crim.App.1986).
The record reveals that during sentencing, the trial court asked defense counsel if Bole had been offered a 25-year sentence as the result of a plea arrangement. The court and the attorneys then talked about that offer, as well as one or more additional offers of 20 years’ imprisonment. The court then stated, “So in addition to everything else I’ve heard, your client until now would not accept responsibility by pleading guilty to this until he was found guilty.” The trial court then sentenced Bole to 40 years’ imprisonment.
Following the sentencing hearing, Bole filed a “Motion to Reconsider Sentence.” He stated that he had a meritorious case in defense of the charge of reckless murder and that the trial court’s sentence of 40 years’ imprisonment was harsh, excessive and disproportionate, and violated his right to be free from cruel and unusual punishment. Bole also filed a “Motion For Judgment of Acquittal, Or in the Alternative, Motion For New Trial,” in which he asserted the same claims.
At the hearing on the motions, defense counsel commented referencing the vari *1096 ous plea offers that Bole had rejected and argued that Bole’s trial had merit and was not a waste of the court’s time. Defense counsel noted that the jury had convicted Bole of the lesser-included offense of manslaughter. At no time did defense counsel argue that, based on the court’s comments at the sentencing hearing, the court’s sentence had been vindictive and in retaliation for Bole’s insisting on going to trial. The trial court denied Bole’s motions.
Because Bole never specifically argued the claim he now raises on appeal but rather generally argued as to the proportionality and validity of his sentence, this issue is not properly before this Court. “The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial.” Snowden v. State, 574 So.2d 960, 967 (Ala.Crim.App.1990). “The purpose of requiring a specific objection to preserve an issue for appellate review is to put the trial judge on notice of the alleged error, giving an opportunity to correct it before the case is submitted to the jury.” Jennings v. State, 588 So.2d 540, 541 (Ala.Crim.App.1991).
Although it could be argued that the trial court’s comments may have been misconstrued by Bole as vindictive or indicating a bias on the part of the trial court, Bole admitted to committing the offense and, when viewed in the context of the entire case, Bole’s argument that the court’s comments evidenced inappropriate sentencing is not supported by the facts. Thus, his contentions, even if reviewable, are without merit.
IV.
Lastly, Bole contends that the trial court committed reversible error and imposed an illegal sentence when it considered the firearm-enhancement statute, codified at § 13A-5-6(a)(4), Ala.Code 1975. Bole argues that because he was convicted of reckless manslaughter although he had been indicted for intentional murder, the firearm-enhancement provision should not have been applied to his sentence. Railey v. State, 710 So.2d 477 (Ala.Crim.App.1996), cert. quashed as improvidently granted, 710 So.2d 479 (Ala.1998). See also Chestang v. State, 837 So.2d 867, 868 n. 1 (Ala.Crim.App.2001).
In Ex parte McCree, 554 So.2d 336 (Ala.1988), the Alabama Supreme Court stated:
“[T]he resolution of this issue requires a two-step process. First, implicit in the language of § 13A-5-6(a)(5) — ‘a firearm or deadly weapon was used or attempted to be used in the commission of the felony5 — is the requirement that the underlying felony for which the defendant is convicted have, as one of its necessary elements, the element of intentional criminal conduct. Therefore, McCree’s reckless or negligent conduct, which resulted in manslaughter, while sufficient to supply the criminal scienter to support a conviction for a Class C felony, does not require a finding that he intentionally used the firearm to commit the felony, and thus can not support the application of § 13A-5-6(a)(5). In other words, reading § 13A-5-6 as a whole, we must construe subsection (a)(5) to mean that convictions for those underlying felonies that are committed without the intentional use of a deadly weapon do not fall within the category of convictions that invoke the enhancement provision of this statute.
“Second, ‘enhancement,’ as that word is used to describe the effect of § 13A-5 — 6(a)(5), necessarily means that in addition to the culpability of the offense for which the defendant has been convicted, the defendant’s conduct is necessarily the result of a higher degree of culpability, because of the jury’s finding that a *1097 ‘firearm or deadly weapon was used or attempted to be used in the commission of the felony.’ Indeed, the use of a deadly weapon to commit the underlying felony is the classic situation intended by the legislature to invoke the enhanced penalty.
“Here, the jury returned a verdict of manslaughter. By virtue of that finding, that McCree recklessly caused the death of his friend, the jury eliminated the element of McCree’s intentional use of a firearm as a means to take human life. The culpability of McCree for recklessness was established by the jury’s verdict. Otherwise, the guilty verdict would have reflected a higher degree of unlawful homicide. (Indeed, the indictment specifically charged McCree with manslaughter under § 13A-6-3(a)(l) and not with a higher degree of criminal culpability.) Therefore, the trial court was without authority to sentence McCree under an enhancement statute that, by its terms, is invoked only by a degree of culpability higher than that for which McCree had been found guilty.”
Ex parte McCree, 554 So.2d at 340-41. (Footnote and emphasis omitted).
However, in Ex parte McCree, the Court specifically noted that it need not determine in that case whether every manslaughter would require the same holding. The court confined the ruling to the facts of that case. In Mays v. State, 607 So.2d 347 (Ala.Crim.App.1992), this court determined that the facts of that case distinguished it from Ex parte McCree, supra, because the defendant in Mays “was taunting a young girl in front of several other children, stating that he would shoot her. He knew the pistol had a bullet in the chamber, which he had loaded himself. He was pointing it directly at the young girl. The victim did nothing to bring about the ‘accident.’” 607 So.2d at 349. This Court noted, in distinguishing the facts, that “[i]n McCree, the officer knew the gun was dangerous, but believed it to be incapable of firing because he thought it had no cartridges in it. He did not point the gun'at the victim. The victim grabbed the gun.” Id.
In determining that the facts of Mays properly supported the application of the firearm-enhancement statute, this court stated:
“The degree of recklessness in the present case far surpasses that found in McCree. The commentary to § 13A-6-3, Code of Alabama 1975, defines ‘recklessly’ as follows:
“ ‘[To act recklessly] means that a person [is] aware of and consciously disregardfs] “a substantial and unjustifiable risk” that death will occur. “The risk must be of such a nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.” ’ [ (quoting § 13A-2-2(3), Code of Alabama 1975).]
“Here, the appellant was aware of placing the deceased victim at the risk of death and consciously and grossly disregarded that risk. This case exemplifies the reason the Alabama Supreme Court limited McCree to its facts. McCree recognizes that there may be other situations where the enhancement provision should be used in reckless manslaughter cases. . We hold that in this case there did exist the intent envisioned by the legislature to apply the enhancement provision for the intentional use of a firearm. No error occurred here.”
Mays v. State, 607 So.2d at 349.
In the present case, Bole was aware of the danger of the use of the gun, and he knew that it was loaded. He pointed the gun directly at the victim and made a *1098 threat, whether “jokingly” (R. 97-99) or not. He then threatened a witness. These facts are more akin to those in Mays; therefore the application of the firearm-enhancement statute was proper in this case.
AFFIRMED.
WELCH, P.J., and WINDOM, KELLUM, and JOINER, JJ„ concur.

. Bole was initially indicted for the offense of murder, a violation of § 13A-6-2(a)(2), Ala. Code 1975, but was convicted of the lesser-included offense of manslaughter, a violation of § 13A-6-3, Ala.Code 1975.

. It is unclear from the record whether the document referred to one or two cases that had been dismissed and references to those cases redacted.